**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JACQUELINE MCDOWELL, | ) | CASE NO. 1:20-CV-00297-SL |
| | ) | |
| Plaintiff, | ) | JUDGE SARA LIOI |
| | ) | UNITED STATES DISTRICT JUDGE |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF THE SOCIAL | ) | CARMEN E. HENDERSON |
| SECURITY ADMINISTRATION, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant, | ) | |

## I. Introduction

Plaintiff, Jacqueline McDowell ("McDowell" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

## II. Procedural History

On July 14, 2017, Claimant filed applications for DIB and SSI, alleging a disability onset date of February 12, 2017. The applications were denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ"). On March 1, 2019, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (ECF No. 11, PageID #: 135). On June 5, 2019, the ALJ issued a written decision finding Claimant was not disabled. (ECF No. 11, PageID #: 98). The ALJ's decision became final

on December 10, 2019, when the Appeals Council declined further review. (ECF No. 11, PageID #: 7).

On February 11, 2020, Claimant filed her Complaint to challenge the Commissioner's final decision. (ECF No. 1.) The parties have completed briefing in this case. (ECF Nos. 16, 18). Claimant asserts the following assignments of error:

> I.  Whether the ALJ erred in his determination that Plaintiff did not have severe mental impairments.
>
> II. Whether the ALJ erred in finding Ms. McDowell did not require the use of a walker/rollator.

(ECF No. 16 at 1).

## III. Background

### A. Relevant Hearing Testimony

The ALJ summarized the Claimant's testimony from the hearing:

> At the March 2019 hearing, the claimant testified that she used a prescribed cane. She said that she was five feet, five inches tall, and weighed 264 pounds. She said that she had back pain and weakness in her legs and that she used a walker every day. She said that she wore ankle braces and compression stockings. She said that she had neuropathy in her arms, hands, and feet. She said that she had anxiety, depression, and stress, and that she received psychotherapy once or twice a month, as well as engaging in group therapy. She said that she used an inhaler. She said that she lay down up to four hours a day.

(ECF No. 11, PageID #: 109).

During the hearing, the ALJ asked the vocational expert to

> assume a hypothetical individual of the Claimant's age and education and with the past jobs that you identified earlier. Further assume that this individual is limited as follows. This is a sedentary exertional hypothetical with the following additional limitations. This individual can only occasionally climb ramps and stairs; can never climb ladders, ropes, or scaffolds; can occasionally balance, stoop, kneel, crouch, and crawl. This person can never work at

> unprotected heights or near dangerous moving machinery. This
> person cannot, cannot engage in commercial driving and can have
> no more than frequent exposure to dust, odors, fumes, and
> pulmonary irritants. Moreover, this person is limited to only
> occasional pushing and pulling with the bilateral lower extremities.

(ECF No. 11, PageID #: 168-169). The vocational expert testified that the person would not be

able to perform Claimant's past jobs, but that jobs existed that the person could do. (ECF No. 11,

PageID #: 169). The vocational expert identified potential jobs as a receptionist, information clerk,

and data entry clerk. (ECF No. 11, PageID #: 169-170). The ALJ then asked whether the jobs

available would change if the individual required the use of a cane. (ECF No. 11, PageID #: 171).

The vocational expert testified that the same jobs would be available for such a person. (ECF No.

11, PageID #: 171). The ALJ then inquired as to whether the jobs would be available of the person

required the use a walker for ambulation. (ECF No. 11, PageID #: 171). The vocational expert

testified that no jobs would be available with the use of a walker. (ECF No. 11, PageID #: 171).

Claimant's counsel then inquired as to how the jobs identified in the initial hypothetical would be

effected if the person required three unscheduled breaks each day, required the ability to elevate

her legs straight out on a regular basis, or would be off task 20% of the usual workday. (ECF No.

11, PageID #: 172). The vocational expert testified that each of the three additional limitations

presented by Claimant's counsel would be work preclusive. (ECF No. 11, PageID #: 172-173).

Ultimately, the ALJ found that Claimant required the use of a cane and included that

limitation in the RFC. The ALJ discussed the vocational expert's testimony as follows:

> I asked Ms. Everts whether any occupations exist which could be
> performed by an individual with the same age, education, past
> relevant work experience, and residual functional capacity as the
> claimant, and which require skills acquired in the claimant's past
> relevant work but no additional skills. Ms. Everts testified that
> representative occupations such an individual could perform include
> the following semiskilled (SVP 4) sedentary jobs in the national
> economy:

| Job Title/DOT Code | Nationwide |
|---|---|
| receptionist/237.367-038 | 600,000 |
| information clerk/237.367-022 | 60,000 |
| data entry clerk/203.582-054 | 100,000 |

(ECF No. 11, PageID #: 116). The ALJ then stated:

> I accept Ms. Everts analysis, as it is not contradicted and her sources of data are considered reliable in light of her professional qualifications, long experience placing individuals in jobs, and familiarity with the rules governing the vocational aspects of Social Security disability evaluation. Her testimony was consistent with the *Dictionary of Occupational Titles* (DOT), pursuant to the requirements of Social Security Ruling 00-4p, or otherwise consistent with her experience in the vocational field (Ex. 11E). She accurately identified the types and approximate number of jobs that the claimant can perform. The jobs identified exist in several industries and are not of an isolated nature. The jobs cited by her constituted a significant number of jobs existing in the economy, including by each individual job title, as well as collectively.
>
> Accordingly, although the claimant's additional limitations do not allow the claimant to perform the full range of sedentary work, considering her age, education and transferable work skills, a finding of "not disabled" is appropriate under the framework of Medical-Vocational Rule 201.15 and Rule 201.07.

(ECF No. 11, PageID #: 116-117).

## B. Relevant Medical Evidence

The ALJ summarized Claimant's symptoms:

> The claimant alleged diabetes, anxiety, depression, allergies, asthma, bronchitis, history of broken ankle, back and shoulder pain, blurry vision, sleep apnea, impaired balance, neuropathy in her feet and hands, difficulty sleeping, impaired memory, difficulty walking and using stairs, and the need to use ankle braces, a walker, and a cane (Exs. 2E/2; 3E; SE/2; and 7E/2).

(ECF No. 11, PageID #: 109).

The ALJ summarized Claimant's physical symptoms and related medical records:

4

By way of history, prior to the claimant's alleged disability onset date, she underwent an open reduction and internal fixation surgical procedure on her left ankle in treatment of a fracture, and x-rays revealed degenerative changes (Ex. lF/3). September 2016 cervical spine x-rays revealed degenerative changes (Ex. 4F/10). Diagnoses included diabetes, obesity, and degenerative disc and joint disease (Exs. 9F, 19F, and 21F).

Since the claimant's alleged disability onset date, the record documents numerous healthcare visits, including treating physician visits, emergency department (ED) care, and hospitalizations, for various complaints, including neuropathy and musculoskeletal pain, with some related findings on exams, but she was generally in no distress or no acute distress and had inconsistent exam presentations and results (Exs. 3F-l 1F, 16F-24F, and 26F-49F). In February 2017, she was seen four times in four days by four different physicians for ultimately a diagnosis of influenza (Ex. 4F/152). Bilateral ankle and foot x-rays revealed degenerative changes (Ex. 20F/35, 36). In March 2017, she reported that she was currently off work due to a need to care for her daughter, who had knee surgery (Ex. 5F/37). Exams revealed normal motor strength and sensory function (Ex. 9F/49, 52). In April 2017, she reportedly had improvement in her bilateral foot pain with a higher dosing of Neurontin (Ex. 7F/18), and reported that, at times, she was unaware of the pain (Ex. 8F/16). Bilateral ankle x-rays revealed degenerative changes (Ex. 8F/31, 32). She was comfortable on an exam, which revealed normal findings (Ex. l0F/7, 8). In May 2017, she reported becoming more dependent on her cane (Ex. 7F/13), and electrodiagnostic testing revealed a mild to moderate chronic S1 intraspinal lesion that likely caused her foot pain, which was also aggravated by obesity (Exs. 14F/8 and 16F/6). A June 2017 exam revealed normal findings, including intact motor strength and sensory function (Ex. 9F/64). In July 2017, she presented for dietitian referral and diabetes (Ex. 6F/146). She described the episodic tingling in her feet as more annoying than painful (Ex. 7F/9). In August 2017, she was noted to ambulate in bilateral braces with a non-antalgic gait pattern (Ex. 7F/4) and reported that aqua therapy had helped (Ex. 8F/4). Right knee x-rays revealed only mild osteoarthritis (Ex. 9F/109). A September 2017 treatment note indicated that her diabetes was mostly controlled and her polyneuropathy and back pain stable (Ex. 9F/69). She was comfortable on an exam, which revealed normal findings (Ex. I0F/11, 12). In October 2017, she was treated for flu-like symptoms (Ex. 29F/92). A couple of days later, she had only a mildly antalgic gait pattern and was ambulating with a cane (Ex. 16F/l7). Elsewhere, she presented with shortness of breath, but physical exam results were normal, including no pulmonary

findings and no limb pain, joint pain, or joint swelling (Ex. 29F/8), and a November 2017 spirometry revealed normal findings (Exs. 28F/32 and 44F/58). A November 2017 exam revealed a normal gait (Ex. 44F/34). Nonetheless, a rollator and braces were prescribed (Ex. 49F).

In November 2017, Dorothy Bradford, M.D., examined the claimant and reported normal findings except for some diminished range of motion (Ex. 14F). The claimant's gait was even and regular with no apparent limp, shuffle, or other disturbance, and she used a walker for support only. Motor strength was normal in all extremities. She had a normal grasp, manipulation, pinch, and fine coordination with her hands.

In December 2017, the claimant ambulated with a non-antalgic gait pattern (Ex. 16F/23), and January 2018 physical exam findings were normal (Exs. 18F/11; 19F/77, 81, 86), except for one exam that revealed her right elbow in an arm sling (Ex. 19F/83). Elsewhere, she presented with a cough and congestion (Ex. 28F/16), but was comfortable on exam, which revealed clear lungs without wheezes, rhonchi, rales, or cough, and there was good air exchange (Ex. 28F/l 7, 18). In February 2018, she had some pain, tenderness, and decreased range of motion of her right upper extremity, but normal strength (Ex. 20F/5). She received a right extensor tendon steroid injection (Ex. 20F/5). Elsewhere, she reported foot pain but no back pain or other muscle pain, and she had only mild ankle edema on exam (Ex. 27F/9). March 2018 exam findings were normal (Exs. 22F/7; 35F/12). In April 2018, she presented with a complaint of breathing difficulty, which was attributed to a thyroid mass (confirmed by CT scan; Ex. 21F/463), but she indicated that she had been able to walk normally and denied limb pain, joint pain, or joint swelling (Ex. 21F/443, 444). She had no numbness, tingling, or weakness (Ex. 21F/446). On exam, her airway was open and breathing was spontaneous and unlabored, which clear breath sounds bilaterally (Ex. 21F/447). May 2018 exam findings were normal (Ex. 22F/18). She underwent a left hemithyroidectomy with removal of a substernal goiter (Ex. 22F/20). June 2018 postoperative exam findings were unremarkable (Ex. 22F/29). Elsewhere in June 2018, she presented with a complaint of low back pain at an intensity level of 7 on a 10-point scale (Ex. 24F/30), but she was only mildly distressed on exam (Ex. 24F/32), which revealed normal muscle/motor strength, though she used a walker and exhibited a bilateral foot drop (Ex. 24F/33). An MRI of her lumbar spine revealed only mild facet arthropathy and mild disc desiccation at L1-2, with no spinal canal or neural foramina stenosis (Ex. 34F/40, 41). An exam revealed edema, a limp, and use of a walker (Ex. 26F/70),

though elsewhere she had a normal gait with no focal neurological defects (Ex. 44F/47). In September 2018, lumbar medial branch nerve block injections were administered (Ex. 24F/20), and she was moving all four extremities post procedure (Ex. 24F/21). A treatment note suggested that she was working an irregular work schedule (Ex. 34F/15). Another treatment note revealed that she was in no distress on exam and had a normal gait (Ex. 44F/54). In October 2018, she reported a pain level of 8 (Ex. 24F/14), but was only mildly distressed on exam (Ex. 24F/16). In November 2018, she presented with back pain and had some tenderness, pain, and spasm, but was in no distress and had normal musculoskeletal range of motion (Ex. 31F/44). Lumbar spine x-rays revealed only mild multilevel endplate sclerosis and osteophyte formation (Ex. 3 lF/45). Other August, September, October, and November 2018 exams revealed normal findings, including intact sensory function and normal extremities (Exs. 26F/77, 78, 85, 117; 36F/8, 9, 14, 21, 22; 42F/18, 25, 33). A November 2018 spirometry revealed normal findings (Ex. 28F/34). In November and December 2018, she underwent lumbar radiofrequency ablation procedures (Ex. 24F/5, 10). A December 2018 exam confirmed that her left ankle brace was fitted correctly (Ex. 32F/4).

In January 2019, the claimant was well appearing and in no acute distress on exam, which revealed normal findings except for edema (Ex. 38F/25). She weighed 265 pounds and had a body mass index (BMI) of 44.13 kg/m2 (Ex. 38F/25). Elsewhere, she had foot and/or back pain and a walker assisted gait (Exs. 39F/31; 40F/7). In March 2019, depends were prescribed in treatment of urinary incontinence (Ex. 48F). In summary, the longitudinal record documents reports of pain and limited range of motion, but inconsistent presentations and exam findings, with many exams revealing normal findings. Additionally, objective diagnostic imagings have indicated relatively mild findings, and treatment has been conservative. However, the treatment records, in combination with the claimant's obesity, do support some level of pain and diminished mobility that reasonably limit her to sedentary work with occasional climbing of ramps and stairs, and occasional balancing, stooping, kneeling, crouching, and crawling, but no climbing of ladders, ropes of scaffolds. Because of her neuropathy and obesity, she must avoid unprotected heights, dangerous moving machinery, and commercial driving. Because of her mild asthma condition, she must no more than frequently be exposed to pulmonary irritants. Because of her bilateral foot conditions and neuropathy, she can no more than occasionally push or pull with her lower extremities, and she requires the use of a cane for ambulation. The record documents some imaging findings with respect to her cervical spine that would

> reasonably limit lifting and carrying within the parameters of
> sedentary work, but the record does not document ongoing upper
> extremity findings to support further limitations, such as
> manipulative limitations.

(ECF No. 11, PageID #: 109-111).

With respect to Claimant's mental symptoms and records, the ALJ summarized:

> The record documents a history of outpatient mental health
> treatment (Exs. 2F, 5F, 6F, 11F, 15F, and 26F). In February 2017,
> on the claimant's alleged disability onset date, she reportedly had no
> depression, anxiety, or suicidal ideation (Ex. 3F/13). In March 2017,
> she presented with an anxious and depressed mood, and a
> constricted, flat affect, but she reported that she was currently off
> work due to a need to care for her daughter, who had knee surgery,
> and was providing respite care to her sister and helping care for her
> mother (Ex. 5F/37). In April 2017, she was pleasant and
> cooperative, but had a constricted affect and preoccupied thought
> processes, and she reported a family meeting regarding her mother's
> declining health (Ex. 5F/50). In May 2017, she reported that her
> mother had passed away and that she was undergoing grief and
> related emotions (Ex. 5F/62). She report[ed] planning a celebration
> for her daughter's high school graduation and attempting to assist
> her in her next steps regarding school or a career (Ex. 5F/73). In
> June 2017, she was noted to be calmer and more content, optimistic,
> and positive, and she was encouraged to explore possible job
> opportunities (Ex. 5F/2). She reported that she had gotten everything
> settled with respect to her son beginning at a new high school in the
> fall (Ex. 6F/136). In July 2017, she was living with her three
> children, ages 13, 18, and 19 (Ex. 7F/9), and she was encouraged to
> increase self-care and begin applying for employment (Ex. 11F/6).
> In August 2017, she was well groomed, pleasant, cooperative, alert,
> and fully oriented (Ex. 7F/4).
>
> In October 2017, psychologist Natalie Whitlow, Ph.D., evaluated
> the claimant and diagnosed persistent depressive disorder with
> mood incongruent psychotic features (Ex. 13F). Dr. Whitlow
> observed that the claimant appeared a bit disheveled, exhibited
> irritability and slightly inappropriate affect, demonstrated poor
> memory, and aimlessly rambled, but had arrived on time,
> maintained appropriate eye contact, confirmed understanding all of
> the information presented to her, and was appropriately attired,
> fairly clean, moderately kept, cooperative, alert, attentive, coherent,
> and fully oriented. The claimant reported that her medications were
> effective and helped her stay calm. She reported that she generally

engaged in healthy personal hygiene habits, but not social and interpersonal functioning, due to impatience and intolerance. She reported living with her three children, managing her finances, keeping gas in her car, ensuring her children had food and maintained proper hygiene, and paying the electric and gas bills. She did not exhibit recognizable signs of anxiety. She exhibited average to low average cognitive functioning.

In October 2017, the clamant reported that her mother recently passed away and that she had difficulty focusing in the morning (Ex. 3E). Elsewhere, she had no depression, anxiety, or suicidal ideation (Ex. 29F/8). In November 2017, she was awake, alert, and fully oriented, and she had normal speech and language (Ex. 14F/8) but elsewhere reported increased "fogginess," decreased energy, and feelings of being discombobulated (Ex. 15F/19). She reported attempting to pass an insurance licensure test numerous time[s] but failing by 20 to 30 points (Ex. 15F/31). In December 2017, she was alert, fully oriented, well groomed, pleasant, and cooperative (Ex. 16F/23). In February 2018, the claimant had a normal mood and affect (Ex. 20F/5), but elsewhere reported a depressed mood due to financial constraints (Ex. 26F/7). In March 2018, she reported frustration and depression due to financial stressors and chronic physical pain (Ex. 26F/19), but, in April 2018, she denied depression, anxiety, and suicide ideation (Ex. 21F/443). In May 2018, she denied anxiety, hallucinations, delusions, depressed mood, difficulty sleeping, loss of appetite, stressors, and suicidal thoughts (Ex. 22F/17). Elsewhere, she denied memory loss (Ex. 30F/24). In June 2018, she was fully oriented and had adequate judgment and insight and apparently normal memory, with no anxiety, depression, or agitation noted (Ex. 24F/33), though elsewhere she reported ongoing stress and anxiety due to severe financial constraints (Ex. 26F/41). In July 2018, she had a depressed and anxious mood, and constricted affect (Ex. 26F/53). In September 2018, she reported attending Women in Transition classes and creating a vision board (Ex. 26F/89). In October 2018, she presented with increased anxiety due to worsening finances (Ex. 26F/101). Other August, September, and November 2018 exams revealed full orientation, appropriate mood and affect, and normal memory, insight, and judgment (Exs. 26F/70, 85, 117; 42F/10). In January 2019, she denied anxiety, depression, and insomnia (Ex. 40F/7).

In March 2019, the claimant testified that she lived with her two children, ages 14 and 21. She said that she drove a car, took her medications, read a bible, tried to read self-help books, sometimes phoned others, frequently listened to ministry, attended church when

able, and grocery shopped with her son's assistance, but she denied performing any household chores or cooking.

(ECF No. 11, PageID #: 104-106).

### C.  Opinion Evidence

The ALJ considered opinions from several medical experts: 1) Dr. Harigopal Balaji, Claimant's treating physician; 2) Dr. Natalie Whitlow, consultative examining psychologist; 3) Dr. Paul Tangeman and Dr. Jaime Lai, state agency reviewing psychologists; 4) Dr. Dorothy Bradford, consultative examining physician; and 5) Dr. Venkatachala Sreenivas and Dr. Abraham Mikalov, state agency reviewing physicians.

Claimant does not argue that the ALJ improperly evaluated the medical source opinions. The ALJ explained his consideration of the medical source opinions as follows:

> I note that [state agency] physicians Venkatachala Sreenivas, M.D., and Abraham Mikalov, M.D., reviewed the record and concluded that the claimant could perform work of light exertion with occasional pushing and pulling with the lower extremities, some postural limitations, and the need to avoid respiratory irritants, unprotected heights, heavy machinery, and commercial driving (Exs. 1A and 3A). I find the opinions of Dr. Sreenivas and Dr. Mikalov persuasive to the extent that that they are supported by and consistent with the above-summarized record documenting the need for exertional, postural, and environmental limitations, as well as no more than occasional pushing and pulling with the lower extremities. However, the longitudinal record, as summarized, supports a more restrictive limitation to sedentary work with the need of a cane for ambulation.
>
> Dr. Bradford, who performed the above-summarized independent consultative exam, opined that the claimant did not appear to be a fall risk on any surface for any distance but likely had foot pain that was aggravated by morbid obesity (Ex. 14F/8). To the extent that Dr. Bradford indicates that the claimant has the ability to ambulate without the need for a walker, I find it persuasive, as it is supported by her exam observations and findings, and is consistent with the above-summarized longitudinal record. [Her] conclusions otherwise were not in the

nature of a function by function assessment of the claimant's work-related abilities.

Dr. Tangeman and Dr. Lai concluded that the claimant had no significant mental work-related limitations (Exs. 1A and 3A). I find this opinion to be persuasive, as Dr. Tangeman and Dr. Lai supported the assessment by citing to Dr. Whitlow's independent consultative evaluation and noting the medical evidence of record did not document significant changes in the claimant's condition. Their assessment is also consistent with the longitudinal record as summarized in Finding 3 above, which documents that the claimant substantially retains mental work-related functional abilities despite her mental symptomatology.

Dr. Whitlow, who performed the independent psychological evaluation summarized in Finding 3 above, opined that, from a mental health perspective, the claimant did not appear to have mental functional limitations, though she presented with limitations primarily related to remembering and carrying out instructions and completing tasks during the evaluation, but Dr. Whitlow explained that there was insufficient information to concluded that it was from mental health symptomatology, physical health, or attempts at deception (Ex. 13F/9, 10). Dr. Whitlow also observed that the claimant presented with irritability and impatience but did not identify any interpersonal factors as having caused her to lose employment in the past (Ex. 13F/10). I find Dr. Whitlow's opinion overall to be persuasive, as he supported his conclusions in his narrative summary of evaluation findings, and his conclusions are generally consistent with the longitudinal record as summarized in Finding 3 above, though I find Dr. Whitlow's assessment unpersuasive to the extent he equivocated and suggested that the claimant could have limitations remembering, carrying out instructions, completing tasks, or engaging with others, as his own summary of the claimant's history does not support such a finding, which is also inconsistent with the longitudinal record summarized in Finding 3 above.

Treating internist Harigopal Balaji, M.D., indicated no impairment to mental-related functioning (Ex. 18F/4). In December 2018, Dr. Balaji contrarily indicated that depression and anxiety resulted in work limitations, and she indicated that the claimant could not sit, stand, and/or walk for a full workday or lift and carry any weight, and needed a job that permitted shifting positions at will and three unscheduled work breaks during the day (Ex. 25F). Dr. Balaji opined that the claimant

11

would be off task 20% of the workday, but was capable of low stress work and had no limitations with handling. I do not find Dr. Balaji's opinions to be persuasive. First, the opinions were internally inconsistent with respect to her assessment of mental work-related limitations and not supported by any specific mental related findings. Second, her suggested physical limitations were not supported with respect to her own exam findings, which generally were substantially or relatively normal (Exs. 9F/8, 11, 14, 17, 20, 23, 26, 29, 32, 35, 36, 39, 42, 46, 49, 52, 55, 58, 61, 64, 67, 71; 34F/3, 6). Additionally, June and September 2018 exams revealed a normal gait and no focal neurological defects (Ex. 34F/19, 46). Moreover, such extreme limitations are inconsistent with the above-summarized longitudinal record with respect to other treating sources.

[***]

The [Commissioner] concluded that the claimant's subjective complaints were only partially consistent with the medical evidence of record showing a non-antalgic, normal gait despite her alleged need for a cane and walker, and she reported that she talked to others at church and made sure bills got paid, the car got gas, and shopping was done despite her reports that she did not socialize and had difficulty with concentration and memory (Exs. 1A/11 and 3A/11). Dr. Whitlow concluded that the information the claimant provided was only minimally reliable because the claimant was unable to independently identify her disabling conditions without referencing medical documentation that she brought with her and was subsequently unable to clearly describe or explain how the conditions that she identified impaired her ability to work. The claimant's level of activity, as summarized throughout this decision, is inconsistent with the level and persistence of symptoms that she alleges. The record documents only conservative, non-invasive treatment. Medications have helped control or reduce her symptoms, and the record does not document significant, persistent medication side effects, though her RFC accommodates medication side effects. In summary, the location, duration, frequency, and intensity of her alleged symptoms, as well as precipitating and aggravating factors, are adequately addressed and accommodated in the above residual functional capacity.

(ECF No. 11, PageID #: 113-115).

## IV.    The ALJ's Decision

12

The ALJ made the following findings relevant to this appeal:

3. The claimant has the following severe impairments: asthma; obesity; diabetes with neuropathy; degenerative disc disease of her cervical and lumbar spine; and degenerative disease of her ankles and left tibial tendinitis (20 CFR 404.1520(c) and 416.920(c)).

5. The claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she can occasionally climb ramps and stairs, and occasionally balance, stoop, kneel, crouch, and crawl, but never climb ladders, ropes of scaffolds. She must avoid unprotected heights, dangerous moving machinery, and commercial driving. She must no more than frequently be exposed to pulmonary irritants. She can no more than occasionally push or pull with her lower extremities, and she requires the use of a cane for ambulation.

10. Considering the claimant's age, education, work experience, and residual functional capacity, she has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1569, 404.1569a, 404.1568(d), 416.969, 416.969a, and 416.968(d)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 12, 2017, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

## B.  Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

**C. Discussion**

Claimant raises two issues on appeal. First, whether the ALJ erred by failing to find that her anxiety and depression were "severe" and by failing to include mental limitations in the RFC. Second, whether the ALJ's improperly determined that Claimant's use of a walker/rollator was not medically necessary.

1.  Step Two

The Claimant argues that the ALJ erred by finding that her anxiety and depression are not "severe", and that substantial evidence does not support the RFC because it does not include mental limitations.

As noted, the ALJ found that Claimant's anxiety and depression are not severe impairments.  (*See* ECF No. 10 at 23).  The Court will not disturb that finding here.  "In the Sixth Circuit, the severity determination is 'a de minimis hurdle in the disability determination process.'" *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (*quoting Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). "[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education and experience." *Id.* "The goal of the test is to 'screen out totally groundless claims.'" *Id.* (*quoting Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985)). However, the failure to find an impairment severe is harmless error where other impairments are deemed severe. *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir.1987)

Here, the ALJ found that Claimant suffered numerous severe impairments: "asthma; obesity; diabetes with neuropathy; degenerative disc disease of her cervical and lumbar spine; and degenerative disease of her ankles and left tibial tendinitis" (ECF No. 11, PageID #: 103). Therefore, Claimant "cleared step two of the analysis." *Anthony*, 266 F. App'x at 457. "This

caused the ALJ to consider [Claimant's] severe and nonsevere impairments in the remaining steps of the sequential analysis. The fact that some of [Claimant's] impairments were not deemed to be severe at step two is therefore legally irrelevant." *Id.* (*citing Maziarz*, 837 F.2d at 244). Even if the ALJ erred by failing to list anxiety and depression as severe impairments, as discussed below he considered the impairments in the remainder of the decision and when determining the RFC; thus, any error is harmless.

Claimant also argues that the ALJ failed to properly consider her depression and anxiety when formulating her RFC.

"When formulating an RFC, an ALJ must consider the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." *Kochenour v. Comm'r of Soc. Sec. Admin.*, No. 3:14-CV-2451, 2015 WL 9258609, at *6 (N.D. Ohio Dec. 18, 2015) (quotation marks and alteration omitted) (*citing LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 388 (6th Cir. 2013) ("[T]he ALJ's assessment of residual functional capacity reflects a claimant's functional capacity in light of all his limitations, not just those that are severe.")). The ALJ must do so because:

> [w]hile a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a 'not severe' impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

*Patterson v. Colvin*, No. 5:14-cv-1470, 2015 WL 5560121, at *4 (N.D. Ohio Sept. 21, 2015) (citations omitted). Said differently, "'an ALJ's conclusion that an impairment is non-severe is not tantamount to a conclusion that the same impairment . . . does not impose any work-related

16

restrictions.'" *Kochenour*, 2015 WL 9258609, at *6 (*quoting Patterson*, 2015 WL 5560121, at *4).

The ALJ in this case properly considered Claimant's anxiety and depression when determining her RFC. Claimant argues that the ALJ failed to consider any facts that weighed in favor of including mental limitations in her RFC such as that she has "difficulty managing stress, excessive worry, forgetfulness, frustration, lack of focus, and anxiety" (ECF No. 16 at 17-18 (citing Tr. 965, 976, 998, 1099)), the treatment records from NEON Health Services (ECF No. 16 at 18 (citing Tr. 435, 439, 443, 447, 466, 470, 956, 967, 978, 989, 1000, 1120, 1134, 1145, 1398, 1405)), and additional notations from Claimant's therapist describing Claimant as having "overproductive speech, preoccupations, and circumstantial or concrete thoughts" (ECF No. 16 at 18 (citing Tr. 2324, 2336)), and a "variable" daily function with "impaired attention and concentration, requiring redirection in conversation" (ECF No. 16 at 18 (Tr. 2326, 2338, 2340, 2372, 2374). Claimant argues that had the ALJ properly considered the evidence of Claimant's mental impairments, additional limitations would have been included in her RFC such that she would not have been found to have skills that could transfer to the semi-skilled, sedentary jobs found by the ALJ. (ECF No. 16 at 19). Without the transferable skills, Claimant argues, she would have been found disabled. (ECF No. 16 at 19).

The Commissioner argues that the ALJ properly detailed Claimant's "treatment records, highlighted supportive objective clinical findings and medical opinion evidence, and explained why mental limitations in the RFC were not warranted" (ECF No. 18 at 16) and that Claimant's request for this Court to reweigh the evidence should be denied (ECF No. 18 at 17).

The Court finds that substantial evidence supports the ALJ's determination that no mental limitations were necessary in the RFC.

A claimant's RFC is the most she can do despite the physical and mental limitations resulting from her impairments. *See* 20 C.F.R. § 404.1545(a). The ALJ, rather than a physician, bears the responsibility for determining the RFC. *See Poe v. Comm'r of Soc.* Sec., 342 F. App'x 149, 156 (6th Cir. 2009). In carrying out this responsibility, the ALJ makes the ultimate finding regarding an individual's ability to perform work-related activities based upon "consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence." Social Securing Ruling (SSR) 96–5p, 1996 WL 374183 at *5 (July 2, 1996); *see also Eslinger v. Comm'r of Soc. Sec.*, 476 F. App'x 618, 621 (6th Cir. 2012) (citing 20 C.F.R. § 404.1545(a)(3)). Although the ALJ may not substitute his opinion for that of a physician, "an ALJ does not improperly assume the role of a medical expert" by assessing the various evidence before rendering the RFC finding. *See Poe*, 342 F. App'x at 156-57.

"In assessing RFC, the [ALJ] must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8p, 61 Fed. Reg. at 34477. In this case, the ALJ found Claimant had physical impairments but no severe mental impairments. The ALJ concluded Claimant's mental impairments were non-severe after determining that she has no more than mild limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing herself. (ECF No. 11, PageID #:104).  The ALJ chose not to adopt mental restrictions in formulating Claimant's RFC because he found the record contained no indication that her mental impairments imposed any functional limitations. If the Commissioner rates the degree of

18

limitation as none or mild, then the Commissioner will generally conclude that the impairment is not severe "unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." 20 C.F.R. § 404.1520a(d).

That the ALJ found Claimant had mild limitations in regards to the functional areas does not mandate inclusion of limitations in the RFC. *See, e.g., Little v. Comm'r of Soc. Sec*., No. 2:14-cv-532, 2015 WL 5000253, at *13-14 (S.D. Ohio Aug. 24, 2015) (finding no error where ALJ did not include RFC limitations to address findings of mild mental limitations); *Caudill v. Comm'r of Soc. Sec*., No. 2:16-CV-818, 2017 WL 3587217, at *5 (S.D. Ohio Aug. 21, 2017) (finding that mild mental impairment does not require inclusion of mental limitations in RFC); *Walker v. Astrue*, No. 3:11-cv-142, 2012 WL 3187862, at *4-5 (S.D. Ohio Aug. 3, 2012) (finding that substantial evidence supported the ALJ's determination that the claimant's mental impairments were mild enough not to warrant specific RFC limitations).

Additionally, the ALJ supported his determination with the medical experts' opinions. The ALJ explained that:

> Dr. Tangeman and Dr. Lai concluded that the claimant had no significant mental work-related limitations (Exs. 1A and 3A). I find this opinion to be persuasive, as Dr. Tangeman and Dr. Lai supported the assessment by citing to Dr. Whitlow's independent consultative evaluation and noting the medical evidence of record did not document significant changes in the claimant's condition. Their assessment is also consistent with the longitudinal record as summarized in Finding 3 above, which documents that the claimant substantially retains mental work-related functional abilities despite her mental symptomatology.

(ECF No. 11 at PageID #: 113). With respect to Dr. Whitlow, the consulting psychological expert whose findings were summarized in the ALJ's analysis of the severity of Claimant's impairments, the ALJ explained:

19

the claimant did not appear to have mental functional limitations, though she presented with limitations primarily related to remembering and carrying out instructions and completing tasks during the evaluation, but Dr. Whitlow explained that there was insufficient information to conclude[] that it was from mental health symptomatology, physical health, or attempts at deception (Ex. 13F/9, 10). Dr. Whitlow also observed that the claimant presented with irritability and impatience but did not identify any interpersonal factors as having caused her to lose employment in the past (Ex. 13F/10). I find Dr. Whitlow's opinion overall to be persuasive, as he supported his conclusions in his narrative summary of evaluation findings, and his conclusions are generally consistent with the longitudinal record as summarized in Finding 3 above, though I find Dr. Whitlow's assessment unpersuasive to the extent he equivocated and suggested that the claimant could have limitations remembering, carrying out instructions, completing tasks, or engaging with others, as his own summary of the claimant's history does not support such a finding, which is also inconsistent with the longitudinal record summarized in Finding 3 above.

(ECF No. 11, PageID #:113-114). Finally, the ALJ considered Dr. Balaji's conflicting opinions:

[On January 25, 2018,] [t]reating internist Harigopal Balaji, M.D., indicated no impairment to mental-related functioning (Ex. 18F/4). In December 2018, Dr. Balaji contrarily indicated that depression and anxiety resulted in work limitations […] I do not find Dr. Balaji's opinions to be persuasive. First, the opinions were internally inconsistent with respect to her assessment of mental work-related limitations and not supported by any specific mental related findings.

(ECF No. 11, PageID #:114). Notably, Dr. Balaji's December 2018 opinion does not explain how or to what extent Claimant's psychological conditions would affect her ability to work. (ECF No. 11, PageID #: 2358).

The ALJ properly considered Claimant's non-severe mental impairments in assessing her RFC and concluded that limitations attributable to her mental impairments were not warranted. The ALJ explained the basis for this conclusion (ECF No. 11, PageID #: at 113-114), which included the function discussion of the "paragraph B" criteria (ECF No. 11, PageID #:103-106), the medical records, and the medical opinions. Although Claimant cites to parts of the record that

detract from the ALJ's decision to omit mental limitations from her RFC, including her own statements and medical notations that she claims the ALJ ignored, her arguments are unavailing. First, as discussed above, sufficient evidence supports the ALJ's RFC. Second, the ALJ is not obligated to discuss every piece of information in the record "so long as he [ ] considers all of a claimant's medically determinable impairments and the opinion is supported by substantial evidence." *Lee v. Berryhill*, Case No. 1:17-cv-1865, 2018 WL 3970553, at *3 (N.D. Ohio Aug. 20, 2018); *Amir v. Comm'r of Soc. Sec.*, 705 F. App'x 443, 450 (6th Cir. 2017). Third, the ALJ properly considered Claimant's own statements regarding the severity of her anxiety and depression and determined that her statements were not consistent with the record evidence. (ECF No. 11, PageID #: 109).

Accordingly, the Court concludes that the ALJ properly considered Claimant's mental impairments in assessing her RFC and that substantial evidence supports the ALJ's decision to omit non-exertional limitations attributable to her mental impairments.

2. Walker/Rollator

In her second assignment of error, Claimant argues that the ALJ "failed to properly analyze the need for a rolling walker, and instead found only the use of a cane medically necessary[.]" (ECF No. 16 at 19). Specifically, Claimant states that

> [t]he ALJ focuses on the use of the rollator as it pertains simply to ambulation, missing the mark by failing to address its need and use for support and general ambulation assistance. The ALJ does not address that the record otherwise demonstrates that Ms. McDowell has ongoing issues with the strength of her ankles and weakness of her tendons, resulting in the need for bilateral AFO braces (Tr. 1175, 1177, 3216). She also has increased neuropathic pain and venous insufficiency (Tr. 1314, 1519, 3182). Further, Ms. McDowell herself reported using walker/rollator for support, testified to the using it in that regard, and reported the same to physicians (Tr. 64, 77, 83-84, 1456). The ALJ overlooks all of this by concluding she is better suited using a cane versus a walker.

21

(ECF No. 16 at 22-23).[1]

Here, the ALJ found that Claimant failed to fulfill her burden under SSR 96-9p to produce evidence that her use of a walker/rollator in the workplace was medically necessary. (ECF No. 11, PageID #: 111-112). Social Security Ruling 96–9p addresses the use of an assistive device in determining RFC and the vocational implications of such devices:

> **Medically required hand-held assistive device**: To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.
>
> Since most unskilled sedentary work requires only occasional lifting and carrying of light objects such as ledgers and files and a maximum lifting capacity for only 10 pounds, an individual who uses a medically required hand-held assistive device in one hand may still have the ability to perform the minimal lifting and carrying requirements of many sedentary unskilled occupations with the other hand.[] For example, an individual who must use a hand-held assistive device to aid in walking or standing because of an impairment that affects one lower extremity (e.g., an unstable knee), or to reduce pain when walking, who is limited to sedentary work because of the impairment affecting the lower extremity, and who has no other functional limitations or restrictions may still have the ability to make an adjustment to sedentary work that exists in significant numbers. On the other hand, the occupational base for an individual who must use such a device for balance because of significant involvement of both lower extremities (e.g., because of a neurological impairment) may be significantly eroded.

---

[1] Claimant misstates the ALJ's finding. The ALJ did not state that Claimant is "better suited using a case versus a walker", rather, the ALJ found that the evidence demonstrates that although a cane is medically necessary, a walker is not.

> In these situations, too, it may be especially useful to consult a vocational resource in order to make a judgment regarding the individual's ability to make an adjustment to other work.

*Titles II & XVI: Determining Capability to Do Other Work-Implications of A Residual Functional Capacity for Less Than A Full Range of Sedentary Work*, SSR 96-9P (S.S.A. July 2, 1996), 1996 WL 374185 (footnote omitted).

The Court finds that the ALJ applied the proper legal standards in the instant case and substantial evidence supports his determination that the medical evidence of record did not establish that a walker was medically required. In his decision, the ALJ acknowledged Claimant's use of assistive devices and found the following:

> I gave due consideration to Social Security Ruling (SSR) 96-9p, which provides that "to find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)."
>
> [* * *]
>
> Although the record documents that a walker/rollator has been prescribed and that the claimant has frequently used it, the findings summarized below document inconsistent exam findings, with many exams indicating a normal gait and normally functioning extremities, and inconsistent documentation of the use of the walker/rollator to support that one is actually medically necessary. Indeed, at the hearing, the claimant testified that she was able to ambulate with a cane when necessary. Furthermore, Dr. Bradford, who performed the above-summarized independent consultative exam, observed that the claimant had an even and regular gait with no apparent limp, shuffle, or other disturbance, and used the walker for support only (Ex. 14F/8). For these reasons, I find that a cane is perhaps medically necessary but not a walker or rollator.

(ECF No. 11, PageID #: 111-112).

SSR 96–9p requires medical documentation of the need for the assistive device, not just notations relating to a claimant's continued use of an assistive device. *See Parrish v. Berryhill*, No. 1:16CV1880, 2017 WL 2728394 (N.D. Ohio June 8, 2017)("While there are some indications in the medical records that Plaintiff was using a cane, this is insufficient to establish that the cane was medically required. Nor does Plaintiff cite to any medical records describing the circumstances for which a cane is needed as required by SSR 96–9p.") (collecting cases). Claimant's prescription for the walker is not sufficient to establish its medical necessity. *See Spies v. Saul*, No. 19-cv-2928, 2020 WL 5044027, at *16-17 (N.D. Ohio Aug. 26, 2020) (although the claimant had prescriptions for assistive devices, there was no error in the RFC because the claimant "does not identify any evidence that meets the standard articulated in SSR 96-9p," which requires documentation of the circumstances where an assistive device is needed) (collecting cases). Claimant points to no medical record establishing that the walker was medically necessary or the specific circumstances under which it was needed. Accordingly, the ALJ correctly applied SSR 96–9p in finding that the walker was not medically necessary and substantial evidence supports that determination. *See Perry v. Berryhill*, No. 1:16CV2970, 2018 WL 1393275, at *4 (N.D. Ohio Mar. 20, 2018)

Claimant cites to Dr. Bradford's notations that she presented with ankle braces and a walker to support the argument that a walker was medically necessary. However, Dr. Bradford's note does not constitute the medical documentation required by SSR 96–9p. Dr. Bradford did not affirm that the walker was medically required, and she did not identify any circumstances under which it was required. Additionally, Dr. Bradford noted "[g]ait is even and regular. No apparent limp, shuffle, or other disturbance. Uses a walker for support only." (ECF No. 11, PageID #: 1534). Dr. Bradford

noted that Claimant "does not appear to be a fall risk on any surface for any distance." (ECF No. 11, PageID #: 1534). Thus, SSR 96–9p is not satisfied by Dr. Bradford's notation.

Claimant also cites to various medical notations regarding her pain management and diagnoses regarding her lower extremities as support for the medical necessity of a walker. (ECF No. 16 at 20-22). However, none of these facts, alone or combined, meet the requirements of SSR 96–9p. Neither Dr. Tanya Johnson (Claimant's podiatrist at Cleveland Clinic) (*See e.g.* ECF No. 11, Page ID #: 1255, 1258, 1596, 1597, 3294), nor Dr. Balaji, nor Dr. Bradford, nor her pain management records indicated that the rollator walker was medically necessary and none provided information concerning the circumstances under which Claimant was required to use it. *See Ross v. Comm'r of Soc. Sec.*, No. 2:17CV169, 2018 WL 580157, at *6 (S.D. Ohio Jan. 29, 2018) (substantial evidence supported ALJ determination that claimant did not medically require assistive device as records regarding use of cane were inconsistent, she was observed ambulating normally without a cane, and no doctor offered opinion claimant needed a cane and did not describe circumstances in which claimant needed cane) (citing SSR 96–9p and *Scroggins v. Comm'r of Soc. Sec.*, No. 16–11913, 2017 WL 4230650, at *3–4 (E.D. Mich. Sept. 25, 2017) (ALJ reasonable in concluding that claimant failed to establish that a cane was medically necessary when no medical source opined that she needed the cane and no medical documentation described circumstances for which she required a cane)).

The ALJ also discounted Claimant's credibility when he noted that Claimant testified at the hearing that she was able to ambulate with a cane when necessary. (ECF No. 11, PageID #: 112).

The Court finds that the ALJ applied the proper legal standards and substantial evidence supported his decision to find that a rollator walker was not medically necessary. "While

25

substantial evidence may exist to the contrary, the decision of the ALJ is supported by his review of the medical evidence which failed to contain documentation of the medical necessity for the [] walker, and failed to provide a description of the circumstances for which [a walker was] needed, such as whether [one was] needed all of the time, sometimes, in certain situations, for certain distances, or on certain terrains, or any other information." *Perry*, 2018 WL 1393275, at *5 (citing SSR 96–9p).

## VI. Recommendation

Based on the foregoing, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

Dated: 4/19/2021

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

---

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019).